# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50344 | **DATE** | 4/5/2012 |
| **CASE TITLE** | Federal Trade Commission vs. OSF Healthcare System, et al. | | |

**DOCKET ENTRY TEXT:**

Enter order on motions to seal. The intervenors' motions to maintain certain hearing exhibits under seal [157] [160] [163] [164] [165] [166] [167] [205] are granted. The parties' motions to maintain hearing exhibits, pre- and post-hearing briefs, and findings of fact under seal are granted. The parties are directed to file unsealed copies of these documents with the confidential material redacted as directed herein within 14 days of this order. Khors' motion to intervene [221] is granted.

■[ For further details see text below.]

Docketing to mail notices.

---

The Federal Trade Commission ("FTC") has filed a motion for preliminary injunction pursuant to 15 U.S.C. § 53(b), seeking to enjoin defendants, OSF Healthcare System ("OSF") and Rockford Health System ("RHS"), from consummating their affiliation agreement. On January 6, 2012, during the expedited discovery permitted prior to the hearing on the motion for preliminary injunction, the Magistrate Judge entered an amended protective order governing the handling of confidential discovery material. The order provided, among other things, that after notice of intent to use any document or transcript at the hearing on the motion for preliminary injunction, the producing party may file a motion requesting that the document or transcript remain under seal.

Prior to and following the hearing on the motion for preliminary injunction, the parties and intervenors filed motions requesting that various hearing exhibits, as well as pre- and post-hearing briefs, and proposed findings of fact, remain under seal. The court preliminarily granted the motions subject to further review and modification and ordered that the movants file statements of good cause for sealing these documents. As explained below, the motions, with certain modifications, are now granted.

### I. LEGAL STANDARD

The law requires this court to make a determination of good cause to seal any part of the record of a case. Citizens First Nat'l Bank v. Cincinnati Ins. Co., 178 F.3d 943, 944 (7th Cir. 1999). This is because, "[t]he parties to a lawsuit are not the only people who have a legitimate interest in the record compiled in a legal proceeding." Id. "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." In re Specht, 622 F.3d 697, 701 (7th Cir. 2010); see also United States v. Foster, 564 F.3d 852, 854 (7th Cir. 2009) ("[T]hose documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term

confidentiality."); Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, 545 (7th Cir. 2002). The party seeking to seal items has the burden of showing good cause, Baxter Int'l. 297 at 548, but the burden is less demanding on non-parties, In re Northshore Univ. HealthSystem, 254 F.R.D. 338, 342 (N.D. Ill. 2008).

## II. MOTION TO INTERVENE FOR PURPOSE OF CHALLENGING SEALING ORDER

Cecile Kohrs, pro se, a journalist with Mlex US, has filed a motion to intervene for the limited purpose of seeking to unseal documents relating to OSF's and RHS' post-merger plans. Specifically, Kohrs seeks (1) any and all documents used as part of any party's proposed findings of fact that were considered as part of the court's opinion, and (2) the "FTI Study." A motion to intervene is the proper vehicle by which to challenge a district court's sealing order. Jessup v. Luther, 227 F.3d 993, 997 (7th Cir. 2000). Therefore, Kohrs' motion to intervene is granted.

With regard to Kohr's specific requests, her request for access to the parties' proposed findings of fact is granted. As explained in section IV below, the parties will file redacted copies of these documents. As for the "FTI Study," PX0001 is a "Business Efficiencies Report for the RHS-OSF Affiliation" prepared for defendants by FTI Healthcare. The court notes, however, that it is not directly relying on this report, but instead has reviewed the expert reports and testimony of Dr. Susan Manning, the defendants' economics expert, who evaluated the claimed efficiencies in the FTI report within the framework of the U.S. Department of Justice and Federal Trade Commission, Horizontal Merger Guidelines (2010), see DX0012 ¶ 4; DX0366 ¶ 3; Tr. at 811. Consequently, like many of the over 2,000 exhibits which the parties moved the admission of at the conclusion of the hearing on the motion for preliminary injunction, PX0001 was never admitted into evidence. Thus, PX0001 remains covered by the amended protective order as confidential discovery. See Baxter Int'l, 297 F.3d at 545 ("Secrecy is fine at the discovery stage, before the material enters the judicial record. But those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." (citation omitted)). Consequently, PX0001 remains under seal.

## III. INTERVENORS' MOTIONS TO MAINTAIN HEARING EXHIBITS UNDER SEAL

### A. Health Care Service Corporation ("HCSC") [163]

Blue Cross Blue Shield of Illinois ("BCBSIL") is a division of intervenor HCSC and it requests that PX0252, PX1025 and PX4005/DX0699 be maintained under seal. PX0252 is the declaration of HCSC's Vice President Joseph Arango which includes specific information about BCBSIL's competitive position in the Rockford metropolitan area, its hospital reimbursement methodologies, its business practices with respect to incentives designed to steer patients to particular hospitals, and the terms of its current contracts with the three Rockford hospitals. PX1025 consists of amendments to BCBSIL's contract with OSF including specific rates for certain services, negotiated rate increases, and bonus provisions. PX4005 and DX0699 are both the transcript of Arango's deposition which includes highly sensitive competitive trade secret information such as: recitations of portions of current hospital contracts, and testimony about those contracts and the negotiations that led to them; specific hospital rates; BCBSIL's negotiating strategies and techniques; the number of subscribers to various BCBSIL products in Rockford; the possible competitive effects of the proposed merger on the financial interests of BCBSIL; and BCBSIL's use of pricing models and the terms of its contract with a hospital in Bloomington, Illinois.

As for good cause to seal, HCSC maintains that BCBSIL's contracts with hospitals and information that reveals its negotiating strategies, hospital rates, financial arrangements, and terms and conditions of contracts are all trade secrets subject to protection. HCSC argues that allowing this information to become public would give other hospitals, including the hospitals in Rockford, an unfair advantage in negotiating with BCBSIL because they would have knowledge of the terms of BCBSIL's contracts with other hospitals (and the negotiating process it

used to arrive at those terms) that they would not otherwise have and to which they are not entitled. HCSC also argues that BCBSIL's hospital rates, bonus structures and other contract terms would be useful information to its competitors in the health insurance market. HCSC states that BCBSIL treats its hospital contracts, and information about their terms and conditions, confidential in the normal course of its business and argues that it would be unduly prejudiced if its confidential information were to become publically available.

Federal Rule of Civil Procedure 26(c)(1)(G) provides that, upon a showing of good cause, the court may enter an order "requiring that a trade secret or other confidential research, development, or <u>commercial information</u> not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G) (emphasis added). Highly confidential commercial information such as pricing information and the process involved in creating a "pricing architecture" can qualify as a trade secret. See <u>Baxter Int'l</u>, 297 F.3d at 547 (holding that competitive business information constitutes a trade secret where its "economic value depends on its secrecy"); <u>PepsiCo, Inc. v. Redmond</u>, 54 F.3d 1262, 1270 (7th Cir. 1995) (holding that information regarding pricing, distribution and marketing constituted trade secret material); <u>Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.</u>, 784 F.2d 1325, 1345-46 (7th Cir. 1986) (finding information related to bids and evaluating bids was "unquestionably sensitive trade secrets" and warranted protection from unnecessary disclosure, as counterparties "could use it to advantage in the next round of negotiations"); <u>Johnson v. Allstate Ins. Co.</u>, No. 07-cv-0781-MJR, 2008 WL 4279992, at *3 (S.D. Ill. Sept. 17, 2008) (finding that insurance company's pricing information involves trade secrets). Moreover, where contract terms have economic value and are not generally known in the industry they may qualify as a trade secrets. See <u>SmithKline Beecham Corp. v. Pentech Pharm., Inc.</u>, 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003) (holding that information about terms and conditions of contracts "that might give other firms an unearned competitive advantage" is legitimately confidential information that competitors should not have and the public does not need to know to evaluate the judiciary's handling of the litigation); <u>Delta Med. Sys. v. Mid-Am Med. Sys., Inc.</u>, 331 Ill. App. 3d 777, 794 (2002) (holding that contract terms with economic value that are not generally known in the industry are protectable trade secrets).

In order for this type of information to qualify as a trade secret, plaintiff must show that (1) the information was sufficiently secret to give it a competitive advantage, and (2) it took affirmative measures to prevent others from acquiring or using the information. <u>Stenstrom Petrol. Servs. Grp., Inc. v. Mesch</u>, 375 Ill. App. 3d 1077, 1090 (2007). Illinois law specifically provides that "[t]he fee schedule, the capitation schedule, and the network provider administration manual [of a health care professional or health care/insurer contract] constitute confidential, proprietary, and trade secret information and are subject to the provisions of the Illinois Trade Secrets Act." 215 ILCS 5/368b(b).

The court has reviewed PX0252, PX1025 and PX4005/DX0699 and is satisfied that they contain confidential commercial information and trade secrets in the form of contract terms, contract negotiations and strategies, and pricing information. HBSC has established that public dissemination –most notably, to other hospitals or one of its competitors– of the trade secrets and confidential commercial information in the exhibits would subject BCBSIL and HCSC to suffer great economic harm. It appears that the information in these exhibits is unknown outside of BCBSIL's business and it employs reasonable efforts to maintain the secrecy of the information in the ordinary course of its business. HCSC has also explained why these documents are important to its business and why disclosure of the information would give BCBSIL a competitive disadvantage and permit competitors to utilize the information for improper purposes. In sum, the potential dangers BCBSIL would face if a competitor gained access to its trade secrets and confidential commercial information outweigh the public's interest in access to these documents. As a result, the court finds that HCSC has set forth good cause for sealing PX0252, PX1025 and PX4005/DX0699.

Having so concluded, however, it is likewise clear that these exhibits also contain information that is not confidential. Ordinarily, in order to protect the public's interest in the judicial process, the court would order that

the confidential material within these exhibits be redacted. See Citizens First Nat'l Bank, 178 F.3d at 945 ("[A] document that contains [sensitive information] may also contain material that is not [sensitive], in which case all that would be required to protect a party's interest in . . . secrecy would be redaction of portions of the document."). However, because exhibits presented at trial or a hearing are not filed with the clerk, see Local Rule 79.1, redaction serves no purpose unless and until access to these exhibits is sought. Upon motion, the court would, without committing itself to granting or denying the request, consider ordering that a redacted copy of the exhibits be produced.[1] To the extent that the court references information from a sealed exhibit in its opinion on the motion for preliminary injunction, it has carefully examined the information and either determined that it is not confidential or limited the reference so that the confidential information is not disclosed.

### B. CIGNA Corporation and Connecticut General Life Insurance Company [167]

CIGNA Corporation and Connecticut General Life (collectively, "CIGNA") request that PX0235, the Declaration of Thomas Golias of CIGNA, and PX4008, Golias' deposition, remain sealed because these exhibits contain confidential business and financial information, the public disclosure of which would unfairly prejudice CIGNA's business interests and competitive position, and would cause them economic injury. In particular, CIGNA maintains that the declaration and deposition testimony of Golias relied upon by the parties in their post-hearing submissions contain confidential, proprietary and trade secret information concerning: CIGNA's contracts, provider network, business plans, products and pricing, market share, negotiations, strategies, and the possible effect of the proposed merger on CIGNA's interests. CIGNA states that it treats this information as confidential, and public disclosure of the information would significantly harm CIGNA by giving an undue advantage to both its competitors –other health plans and the hospital systems– and the providers with whom CIGNA has or may enter into service agreements.

The court has reviewed PX0235 and PX4008 and is satisfied that they contain CIGNA's contract negotiations and strategies, contract terms, and pricing information, which qualify as confidential commercial information and trade secrets based on the rationale and case law cited in § III.A of this order. See Baxter Int'l, 297 F.3d at 547 (holding that competitive business information constitutes a trade secret where its "economic value depends on its secrecy"); PepsiCo., 54 F.3d at 1270 (pricing information); Ball Mem'l Hosp., 784 F.2d at 1345-46 (bids during negotiations); SmithKline Beecham, 261 F. Supp. 2d at 1008 (terms and conditions of contracts "that might give other firms an unearned competitive advantage"); Delta Med. Sys., 331 Ill. App. 3d at 794 (contract terms). The court finds further that CIGNA has shown good cause to keep PX0235 and PX4008 sealed because disclosure of this confidential information would harm CIGNA while giving its competitors an unfair advantage. Therefore, CIGNA's motion that these exhibits remain under seal is granted.

### C. Humana, Inc. ("Humana") [205]

Humana requests that PX0255, PX4002, PX4260; PX4258-001, PX4258-004, PX4258-002; and PX4258-006 and 007 remain under seal. PX0255 and PX4002 are the declaration and deposition of Rob Hitchcock. Humana states that these exhibits contain the number of Humana insureds in Winnebago County, the amount of money spent by Humana for primary care in Winnebago and Boone Counties, the percentage of Humana's "spend" on primary care services that was paid to SwedishAmerican Hospital, its internal strategies, its view of the market, and its pricing and reimbursement information. The information is highly sensitive and not available to the general public or Humana's competitors and there is no legitimate reason as to why the public needs or is entitled to this business information.

PX4260 is an internal email regarding the amount of Humana's claims and insured lives in the Rockford area. Humana states that it contains highly confidential and proprietary information related to the number of Humana's self-insured lives in the Rockford area as well as the total amount spent by Humana on claims related to care provided by Primary Care Physicians in Humana's network. This information is not available to the

public or to Humana's competitors, is information that is not available to those outside Humana, and is maintained as a private communication within Humana.

PX4258-001, PX4258-004, PX4258-002 are part of the competitive information and research titled "Implications of OSF purchasing Rockford Memorial – Humana's View." Humana states that these exhibits contain commercially sensitive information, including specific contract terms that are not public, descriptions of market advantages, as well as Humana's commercial and Medicare utilization for Rockford Memorial, OSF and SwedishAmerican hospitals. The table in PX4258-002 specifically identifies the amount of claims made, the amount allowed, the amount paid by Humana and the discount applied with respect to Humana's insureds in Winnebago County. The documents also set forth Humana's market share as it related to each of the three hospital providers. This information is not available to anyone outside Humana, especially competitors, and if it were available to competitors, it would allow them use that information to Humana's disadvantage in the marketplace.

PX4258-006 and 007 are internal emails containing Humana's competitive information. Humana states that these exhibits outline premiums paid by Humana insureds as well as strategies for renewing the contracts for employers in Winnebago County. This information was not intended for public disclosure, is maintained solely for Humana's use, is not available to anyone outside Humana, and would put Humana at a competitive disadvantage if the information were made public.

The court has reviewed PX0255, PX4002, PX4260, PX4258-001, PX4258-004, PX4258-002, and PX4258-006 and 007 and is satisfied that they contain Humana's pricing information, contract terms, and negotiation strategies, which qualify as confidential commercial information and trade secrets based on the rationale and case law cited in § III.A of this order. See Baxter Int'l, 297 F.3d at 547 (holding that competitive business information constitutes a trade secret where its "economic value depends on its secrecy"); PepsiCo., 54 F.3d at 1270 (pricing information); Ball Mem'l Hosp., 784 F.2d at 1345-46 (bids during negotiations); SmithKline Beecham, 261 F. Supp. 2d at 1008 (terms and conditions of contracts "that might give other firms an unearned competitive advantage"); Delta Med. Sys., 331 Ill. App. 3d at 794 (contract terms). The court finds further that Humana has shown good cause to keep PX0255, PX4002, PX4260, PX4258-001, PX4258-004, PX4258-002, and PX4258-006 and 007 sealed because disclosure of the confidential information therein would harm Humana while giving its competitors an unfair advantage. Therefore, Humana's motion that these exhibits remain under seal is granted.

### D. Employers Coalition on Health ("ECOH") [164]

ECOH requests that PX0254, DX0376, DX0377, DX0379 and DX0712 remain under seal. ECOH states that PX0254, the declaration of William J. Pocklington, Director of Provider Services at ECOH, contains information on ECOH's competitive position in the Rockford metropolitan area, ECOH's approach to business in the Rockford Market and relative position, its business practices in that market, its business practices with respect to contract negotiation, and sensitive information concerning ECOH's internal processes that would undermine its ability to effectively operate in the marketplace should such information be made public. ECOH states that DX0376, DX0377, and DX0379 are executive and board meeting minutes that include internal discussion of ongoing contract negotiations, network configurations, contract information, member company issues, network management, personal opinions of board members that reflect the internal deliberations and business decisions of ECOH, claim management issues and long term strategic planning, as well as ECOH contract information currently in effect, and thereby represent proprietary and trade secret information never intended to be made public. ECOH states that DX0712 is the transcript of the deposition of Pocklington which includes highly sensitive trade secret information and personal processes that Pocklington relies on in negotiating contracts, maintaining business relationships within the Rockford market and the process he follows.

The court has reviewed PX0254, DX0376, DX0377, DX0379 and DX0712 and is satisfied that they contain ECOH's pricing information, contract terms, and negotiation strategies, which qualify as confidential commercial information and trade secrets based on the rationale and case law cited in § III.A of this order. See Baxter Int'l, 297 F.3d at 547 (holding that competitive business information constitutes a trade secret where its "economic value depends on its secrecy"); PepsiCo., 54 F.3d at 1270 (pricing information); Ball Mem'l Hosp., 784 F.2d at 1345-46 (bids during negotiations); SmithKline Beecham, 261 F. Supp. 2d at 1008 (terms and conditions of contracts "that might give other firms an unearned competitive advantage"); Delta Med. Sys., 331 Ill. App. 3d at 794 (contract terms). The court finds further that ECOH has shown good cause to keep these exhibits sealed because disclosure of the confidential information therein would hinder ECOH's ability to effectively function in the marketplace while giving its competitors an unfair advantage. Therefore, ECOH's motion that PX0254, DX0376, DX0377, DX0379 and DX0712 remain under seal is granted.

### E. UnitedHealth Group, Inc. ("UnitedHealth") [157]

UnitedHealth requests that PX4001, the deposition transcript of UnitedHealth's Regional Vice President Michelle Lobe, remain under seal. UnitedHealth states that the exhibit contains, among other things, the terms of UnitedHealth's contracts with hospitals in the Rockford area, its contracting strategy with those hospitals, its product offerings, and its internal data regarding its performance in the Rockford area. UnitedHealth states further that the release of this information to the public would impact its commercial position with respect to its competitors, including BCBSIL, Aetna, and CIGNA, and those hospitals with which UnitedHealth seeks to contract, specifically, OSF, RHS, and Swedish American. In addition, UnitedHealth states that disclosure of this information would harm its business, particularly as it relates to contract negotiations with health care providers and the management and development of its network products and offerings. The public would not otherwise have access to this information which has substantial economic value and UnitedHealth treats it as confidential in the normal course of its business.

The court has reviewed PX4001 and is satisfied that it contains UnitedHealth's pricing information, contract terms, and negotiation strategies, which qualify as confidential commercial information and trade secrets based on the rationale and case law cited in § III.A of this order. See Baxter Int'l, 297 F.3d at 547 (holding that competitive business information constitutes a trade secret where its "economic value depends on its secrecy"); PepsiCo., 54 F.3d at 1270 (pricing information); Ball Mem'l Hosp., 784 F.2d at 1345-46 (bids during negotiations); SmithKline Beecham, 261 F. Supp. 2d at 1008 (terms and conditions of contracts "that might give other firms an unearned competitive advantage"); Delta Med. Sys., 331 Ill. App. 3d at 794 (contract terms). The court finds further that UnitedHealth has shown good cause to keep this exhibit sealed because disclosure of the confidential information therein would harm its business while giving its competitors an unfair advantage. Therefore, UnitedHealth's motion that PX4001 remain under seal is granted.

### F. Coventry Health Care, Inc. ("Coventry") [165] [166]

Coventry requests that PX0256, PX0287, PX1102, DX0719, and DX0944 remain under seal. PX0256 and PX0287 are the declaration and supplemental declaration of Todd Petersen, CEO of Coventry's Illinois affiliate, Coventry Health Care of Illinois, Inc. The declarations contain Coventry's competitive position in the relevant market, negotiating strategies with and among providers in the Rockford area, Coventry's annual expenditures with providers in the Rockford area, the proposed merger's potential competitive effects on Coventry if consummated, and the results of Coventry's proprietary market analysis including desired and/or optimal contract rates and discounts. PX1102 is an email chain among Coventry personnel involved in negotiating contracts with providers containing highly confidential and competitively sensitive information including Coventry's contract terms with RHS and SwedishAmerican Health System, as well as Coventry's negotiating strategy and contract discounts. DX0719 and DX0944 are transcripts of the depositions of Petersen containing contract negotiation strategy, contract rates and discounts, product offering, and the potential

competitive effects of the proposed merger on Coventry.

Coventry states that these exhibits contain highly confidential and competitively sensitive information including details about contractual provisions relating to pricing, volumes, exclusivity, financial data, and strategic plans. Disclosure of Coventry's confidential materials would severely undermine Coventry's ability to negotiate competitively in Rockford and in broader markets. Specifically, if placed in the public domain, this information would give the very business people at OSF and RHS with whom Coventry negotiates access to Coventry's highly sensitive financial information, including contract rates and terms with other providers, as well as Coventry's negotiating strategies. The public would not otherwise have access to this information which has substantial economic value and Coventry treats it as confidential in the normal course of its business.

The court has reviewed PX0256, PX0287, PX1102, DX0719, and DX0944 and is satisfied that they contain Coventry's pricing information, contract terms, and negotiation strategies, which qualify as confidential commercial information and trade secrets based on the rationale and case law cited in § III.A of this order. See Baxter Int'l, 297 F.3d at 547 (holding that competitive business information constitutes a trade secret where its "economic value depends on its secrecy"); PepsiCo., 54 F.3d at 1270 (pricing information); Ball Mem'l Hosp., 784 F.2d at 1345-46 (bids during negotiations); SmithKline Beecham, 261 F. Supp. 2d at 1008 (terms and conditions of contracts "that might give other firms an unearned competitive advantage"); Delta Med. Sys., 331 Ill. App. 3d at 794 (contract terms). The court finds further that Coventry has shown good cause to keep these exhibits sealed because disclosure of the confidential information therein would harm its business while giving its competitors an unfair advantage. Therefore, Coventry's motion that PX0256, PX0287, PX1102, DX0719, and DX0944 remain under seal is granted.

### G. Aetna, Inc. ("Aetna")

Aetna requests that DX0382, DX0383, DX0386 DX0388, DX0703, and PX0251 remain under seal. DX0382, DX0383, DX0386 DX0388 are emails with attachments containing confidential Aetna financial data and analysis regarding costs and prices, and the methodologies to calculate costs and prices broken down by specific provider and services provided. Aetna utilizes this financial data and methodologies in calculating costs and prices that it uses in negotiating contracts with providers. DX0703 is a transcript of the deposition of Suzanne Hall, Aetna's Vice President of Network Management, and PX0251 is her declaration. These documents contain strategies utilized by Aetna when negotiating with specific providers as well as Aetna's consideration of new products.

Aetna states that these exhibits contain confidential financial data and analysis regarding costs and prices, and the methodologies to calculate costs and prices broken down by specific provider and services provided. Aetna utilizes this financial data and methodologies in calculating costs and prices that it uses in negotiating contracts with providers. Aetna derives economic value from this information not being known to other persons. Disclosure of Aetna's confidential materials would allow the providers to obtain economic value as they would gain access to Aetna's own pricing information and negotiating strategies. Similarly, Aetna's competitors would obtain economic value from the disclosure of Aetna's pricing information and negotiation strategies as they could use this information to obtain an improper competitive advantage over Aetna. The confidential financial data, negotiating strategies and new product plans in these documents and testimony are not made available to the public and are available only to those Aetna employees whose responsibility involves negotiating the contracts at issue. Each Aetna employee who has access to this information signs an agreement to adhere to Aetna's policy to hold this information confidential and to guard against disclosure to others.

The court has reviewed DX0382, DX0383, DX0386, DX0388, DX0703, and PX0251 and is satisfied that they contain Aetna's pricing information, contract terms, and negotiation strategies, which qualify as confidential commercial information and trade secrets based on the rationale and case law cited in § III.A of this order. See

Baxter Int'l, 297 F.3d at 547 (holding that competitive business information constitutes a trade secret where its "economic value depends on its secrecy"); PepsiCo., 54 F.3d at 1270 (pricing information); Ball Mem'l Hosp., 784 F.2d at 1345-46 (bids during negotiations); SmithKline Beecham, 261 F. Supp. 2d at 1008 (terms and conditions of contracts "that might give other firms an unearned competitive advantage"); Delta Med. Sys., 331 Ill. App. 3d at 794 (contract terms). The court finds further that Aetna has shown good cause to keep these exhibits sealed because disclosure of the confidential information therein would harm its business while giving its competitors an unfair advantage. Therefore, Aetna's motion that DX0382, DX0383, DX0386, DX0388, DX0703, and PX0251 remain under seal is granted.

### H. SwedishAmerican Health System ("SwedishAmerican")

SwedishAmerican requests that PX0289, PX4000, DX0240, and DX0244 remain under seal. PX0289 is the declaration of William Gorski, M.D., a former Chief Operating Officer for SwedishAmerican. PX4000 is the deposition of Richard Walsh, Executive Vice President and Chief Operating Officer for SwedishAmerican. According to SwedishAmerican, these exhibits contain trade secrets falling into three categories: managed care contracting, strategic plans, and costs. SwedishAmerican treats the information in these categories as highly confidential and it is not shared with anyone other than those individuals at SwedishAmerican who need access to the information to perform their jobs. If the managed care contracting information were made public, it would provide managed care payors with information they could use to their advantage in future negotiations, it would decrease SwedishAmerican's ability to negotiate with payors and increase the ability of competitors to negotiate against them in seeking payor contracts giving them an unearned competitive advantage. If the strategic planning information were made public, it would give SwedishAmerican's competitors insights that would allow them to undercut or replicate those plans, place SwedishAmerican at a competitive disadvantage, and give competitors an unearned competitive advantage. If the cost information were made public, it would give managed care payors information that they could use to their advantage in future negotiations with SwedishAmerican and would constitute an unearned competitive advantage.

DX0240 is an overview of SwedishAmerican's affiliation agreement with the University of Wisconsin that discloses key terms and strategic objectives which both entities have taken steps to preserve the secrecy of through a confidentiality clause and limiting access within each organization. DX0244 is a study performed by Navigant Consulting commissioned by SwedishAmerican which contains interviews with senior management and board members about the strategic direction of SwedishAmerican. SwedishAmerican has restricted the use of this document to senior management and employees charged with strategy implementation. If these documents were made public, competitors would gain insights that would enable them to undercut or replicate SwedishAmerican's plans and strategies giving them an unearned competitive advantage.

The court has reviewed PX0289, PX4000, DX0240, and DX0244 and is satisfied that they contain SwedishAmerican's pricing information, contract terms, and negotiation strategies, which qualify as confidential commercial information and trade secrets based on the rationale and case law cited in § III.A of this order. See Baxter Int'l, 297 F.3d at 547 (holding that competitive business information constitutes a trade secret where its "economic value depends on its secrecy"); PepsiCo., 54 F.3d at 1270 (pricing information); Ball Mem'l Hosp., 784 F.2d at 1345-46 (bids during negotiations); SmithKline Beecham, 261 F. Supp. 2d at 1008 (terms and conditions of contracts "that might give other firms an unearned competitive advantage"); Delta Med. Sys., 331 Ill. App. 3d at 794 (contract terms). The court finds further that SwedishAmerican has shown good cause to keep these exhibits sealed because disclosure of the confidential information therein would harm its business while giving its competitors an unearned advantage. Therefore, SwedishAmerican's motion that PX0289, PX4000, DX0240, and DX0244 remain under seal is granted.

### IV. PARTIES' MOTIONS TO MAINTAIN HEARING EXHIBITS, PRE- AND POST-HEARING BRIEFS, AND FINDINGS OF FACT UNDER SEAL

### A. Defendants OSF and RHS

Defendants have requested that portions of their pre-hearing, post-hearing, and reply briefs, as well as their proposed findings of fact, remain under seal and have submitted proposed redacted versions of those briefs to be filed in the public record. The court has reviewed the redacted versions of these documents and concludes that the prosed redactions of references to confidential information are appropriate. However, the court notes that it is not necessary to redact the exhibit number itself of a sealed exhibit, as opposed to the content of a sealed exhibit, because citation to an exhibit number does not reveal any confidential information. Therefore, with this modification, un-sealed redacted copies of these documents are to be filed with the clerk within 14 days of this order.

Defendants also collectively request that 133 hearing exhibits remain under seal. In support of their request, defendants have submitted the declarations of Henry Seybold Jr., Senior Vice-President and Chief Financial Officer for RHS, and Robert Sehring, Chief Executive Officer, Ambulatory Services and Accountable Care Division of OSF. Seybold declares that 80 hearing exhibits[2] contain competitively sensitive information regarding: RHS' operations and potential affiliations; perceived benefits of the RHS/OSF affiliation; competitor hospitals' or managed care organizations' information; managed care contracting; internal analysis of RHS' strengths, weaknesses, and future opportunities; analysis reflecting RHS' views of competitor hospitals; budgeting and forecasting information; confidential discussions regarding recruitment, clinical development, and market assessments; contracting and negotiating information; RHS' confidential contracting communications with BCBSIL, Coventry, Aetna, Alliance, Choice Care Network, and ECOH; reports of independent auditors; contracts between RHS and Coventry; the Affiliation Agreement; post-affiliation strategic plans; confidential financial and operating data; discussions of future goals and strategies; confidential performance and operation statistics; confidential content of Board of Directors' and finance committee meetings; projected Medicare payments; confidential discussions regarding healthcare reform legislation; confidential communications regarding legal counsels' retention of FTI to perform a study; expert reports containing information regarding the parties' and non-parties' (including competitor hospitals and managed care organizations) managed care contracting; operating and capital budget reports; and transcripts of the depositions of Paula Dillon, Henry Seybold, Susan Schrieber, Kevin Ruggles, Gary Kaatz, and Monica Noether which contain confidential information pertaining to RHS, OSF, and non-parties including managed care contracting, terms of RHS/OSF affiliation, and strategic plans. Seybold further declares that public disclosure of the confidential information within these 80 exhibits would cause a clearly defined, serious competitive injury to RHS and to various managed care organizations.

Sehring declares that 53 hearing exhibits[3] contain competitively sensitive information regarding: payor mix figures; financial status and operations of St. Anthony Medical Center ("SAMC"); OSF's operation data; confidential contract rates of various services hired by OSF; analysis of OSF and SAMC negotiation and contract strategy; the process and evaluation of the FTI Efficiencies Study; analysis of OSF's and SAMC's negotiation and contract strategy with managed care organizations; SAMC's views on its competitors; the negotiation process regarding the proposed affiliation; SAMC's market position and business strategy; financial analysis of potential reconfiguration of SAMC's facility; analysis of OSF's market position and business strategy; OSF's business strategy regarding managed care organizations contracting; OSF's quality status and improvement strategy; specific rates and negotiations of managed care organizations contracts; managed care contracting portfolios of OFS and RHS; pricing information relating to managed care contracts between OSF and managed care organizations; and profitability information.

The court finds that the 133 hearing exhibits which defendants request remain sealed contain defendants' pricing information, contract terms, and negotiation strategies, which qualify as confidential commercial information and trade secrets based on the rationale and case law cited in § III.A of this order. See Baxter Int'l, 297 F.3d at 547 (holding that competitive business information constitutes a trade secret where its "economic

value depends on its secrecy"); PepsiCo., 54 F.3d at 1270 (pricing information); Ball Mem'l Hosp., 784 F.2d at 1345-46 (bids during negotiations); SmithKline Beecham, 261 F. Supp. 2d at 1008 (terms and conditions of contracts "that might give other firms an unearned competitive advantage"); Delta Med. Sys., 331 Ill. App. 3d at 794 (contract terms). The court finds further that defendants have shown good cause to keep these exhibits sealed because disclosure of the confidential information therein would harm their businesses while giving their competitors an unearned advantage. Therefore, defendants' request to maintain these exhibits under seal is granted.

### B. Plaintiff FTC

The FTC has requested that portions of its pre-hearing, post-hearing, and reply briefs, as well as its proposed findings of fact remain under seal and has submitted proposed redacted versions of those briefs to be filed in the public record. The FTC states that it has conferred with defendants and they agree with the FTC's proposed redactions with the exception of the following three instances, which the FTC has not redacted and defendants believe should be redacted: (1) references on page 8 of the FTC's pre-hearing brief to three instances of coordination between the three Rockford hospitals in 2005, 2007, and 2008; (2) the chart on page 9 of the FTC's post-hearing brief titled "Notable Coordinated Activity" summarizing instances of coordination among the three Rockford Hospitals between 2005 and 2011; and (3) a reference on page 9 of the FTC's post-hearing reply brief to an email between OSF executives discussing cost savings projections generated by FTI. The court agrees with the FTC that these portions of the FTC's briefs do not contain any specific confidential business information and should not be redacted. More specifically, these portions of the FTC's briefs do not reveal any pricing information, bids during negotiations, or contract terms that could give other firms an unearned competitive advantage. The court has also reviewed the balance of the redacted versions of these documents and concludes that the proposed redactions of references to confidential information are appropriate. However, the court notes that it is not necessary to redact the exhibit number itself of a sealed exhibit, as opposed to the content of a sealed exhibit, because citation to an exhibit number does not reveal any confidential information. Therefore, with this modification, un-sealed redacted copies of these documents are to be filed with the clerk within 14 days of this order.

1. This ruling is applicable to all the hearing exhibits that remain sealed at the requests of the intervenors' and parties because all of the exhibits contain both confidential and non-confidential information.

2. Specifically, DX0004, DX0005, DX0007, DX0026, DX0028, DX0032, DX0034, DX0035, DX0036, DX0038, DX0039, DX0040, DX0041, DX0047, DX0050, DX0056, DX0059, DX0066, DX0080, DX0095, DX0098, DX0101, DX0122, DX0145, DX0163, DX0170, DX0183, DX0184, DX0185, DX0186, DX0355, DX0397, DX0698, DX0706, DX0710, DX0716, DX0898, PX0004, PX0034, PX0037, PX0041, PX0168, PX0174, PX0175, PX0210, PX0215, PX0216, PX0220, PX0226, PX0301, PX0556, PX0563, PX0566, PX0568, PX0576, PX0580, PX0592, PX0623, PX0630, PX0681, PX0690, PX0696, PX0704, PX0715, PX2000, PX2263, PX2269, PX3546, PX3590, PX3620, PX3683, PX3684, PX4021, PX4025, PX4626, PX4691, PX4711, PX4712, PX4763, PX4764.

3. Specifically, DX0003, DX0012, DX0189, DX0190, DX0191, DX0193, DX0194, DX0195, DX0196, DX0197, DX0394, DX0561, DX0572, DX0700, DX0708, DX0709, PX0005, PX0211, PX0213, PX0225, PX0227, PX0229, PX0318, PX0321, PX0322, PX0329, PX0340, PX0345, PX0371, PX0375, PX0376, PX0388, PX0452, PX0458, PX0465, PX0482, PX0485, PX2001, PX2262, PX2264, PX2268, PX3049, PX3069, PX3090, PX4020, PX4023, PX4515, PX4573, PX4595, PX4596, PX4603, PX4604, PX4726.